142 So.2d 899

**Ansley KNIGHT**

v.

**STATE of Alabama.**

4 Div. 101.

Supreme Court of Alabama.

June 21, 1962.

Allen Cook, Andalusia, for appellant.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

**COLEMAN, Justice.**

This is an automatic appeal from a conviction for murder in the first degree and sentence of death.

In bare outline, the evidence for the State tended to show that defendant entered a taxicab and rode out from town to a spot where defendant killed the taxi driver by stabbing him many times with an ice pick. The evidence for defendant tended to show self-defense.

**I.**

We are of opinion that the court did not err in overruling defendant's motion to postpone arraignment.

The record contains an order of the court filed September 5, 1961, setting arraignment for September 18, 1961. Defendant's motion shows that defendant's counsel examined the file on September 13, 1961. Our conclusion is that defendant's counsel thus had five days' notice of the day set for arraignment.

In many cases this court has said that a motion for continuance is addressed to the sound discretion of the court and the exercise thereof is not subject to review except for gross abuse. We are not cited to any case where this court has held that the trial court erred to reversal in denying a continuance.

We are not persuaded that the record in the instant case shows such an abuse. The only matter in the record which supports the motion is the motion itself, which is sworn to. The statements in the motion to effect that defendant's counsel needed more time to investigate are "conclusion of counsel, without any fact to show that the accused would be prejudiced" by denial of the motion. Morris v. State, 193 Ala. 1, 6, 68 So. 1003. See Peterson v. State, 231 Ala. 625, 166 So. 20.

**II.**

Defendant argues that the judgment must be reversed because part of the trial of defendant was conducted while the defendant was absent from the court.

The record discloses that defendant filed a motion to "re-qualify the jury venire" on the ground that defendant was absent from the courtroom at the time the court qualified the venire. Testimony was taken for and against the motion. The court denied the motion and defendant excepted.

After conviction, defendant moved for a new trial. The first and second grounds of that motion seek a new trial for:

"1. An error of law occurring at the trial and excepted to by the defendant occurred in that the court qualified the entire jury venire present for the week of court in the absence of the defendant, the defendant at the time being in a side room outside the sight of the court, and at a position he could not see the court, and such position of defendant was unknown to defendant(')s counsel and could not have been remedied by due diligence of defendant(')s counsel. At the time, the defendant

was in custodia legis and not free on bail.

"2. An irregularity in the proce(e)ding of the court, or error at law occurring at the trial occurred in that after qualifying the venire as to the cases to be tried during the week, the court called for the prospective jurors who had excuses and desired to be relieved of jury duty to come forward, whereupon the court required defendant(')s counsel to speak up and say whether he had any objection to the jurors being excused, there being about to-wit 12, who sought to be excused, and defendant(')s counsel refused to participate in the proceedings as to excuse, whereupon, the court refused to excuse any of them because of the remark of defendant(')s counsel as to nonparticipation, and hence this large segment of the venire were immediately prejudiced against the defendant(')s counsel."

The motion for new trial was overruled.

The transcript of testimony commences as follows:

"BE IT REMEMBERED: That this case came on to be tried in the Circuit Court of Covington County, Alabama, on the 25th day of September, 1961, before Hon. F. M. Smith, Judge of the 22nd Judicial Circuit, and a struck jury from the regular and special venire, and the following proceedings were had:

"After qualifying the jurors generally, the following took place:

"THE COURT: Gentlemen, this is very important and I want you to pay particular attention to these questions at this time: Now it will not in any way disqualify you, it is for information purposes only, but it is very important. I want to ask you at this time if any member of this jury venire has a fixed opinion against capital punishment? We will have to have your name.

"Marvin Lord.

"All right, is there any other member of the jury venire who has a fixed opinion against capital punishment?

"Adison T. Kervin.

"Is there anyone else? (None)

"Now the next question is also very important, gentlemen. Is there any member of this jury venire who would not convict on circumstantial evidence?

"William B. Owens.

"Anyone else who would not convict on circumstantial evidence?

"William M. Garrett and Adison T. Kervin.

"Anyone else? (None)

"Now, gentlemen, the next question has to do with excuses, but rather than hear your excuses at this time, I am going to ask you to be sworn again, and then after you have been sworn those who have excuses to offer as to why you should not serve on the jury during this week can remain standing and we will take up your excuses one at the time. The others may be seated after you are sworn.

"Hold up your right hand and be sworn again: You do solemnly swear or affirm that you will well and truly try all issues and execute all writs of inquiry which may be submitted to you during the present week and true verdicts render, so help you God.

"All right, you may be seated now, except those who have excuses to offer as to why you should not serve.

"The first gentleman who has an excuse to offer is Mr. Wiggins. Does the Defendant Helms agree to Mr. Wiggins being excused?

"MR. DONALD F. COLQUETT (Attorney for Lennie Oree Helms): Let the record show that the defendant Helms objects to the excusing of any jurors on this date and at this time and takes no further part in the discussion of the jurors and their excuses.

"THE COURT: What about the Defendant Knight?

"MR. COOK: The Defendant Knight submits the same statement, that the defendant chooses to take no part in the deliberation and objects to excusing any of them at this time.

"THE COURT: Gentlemen of the jury, those of you who have excuses to offer, these two defendants refuse to concur in you being excused, no matter what your excuse is, they have made a blanket statement that they won't agree to it, so I am going to have to ask you to serve. So you may be seated.

"Let me say this to you gentlemen who came up with excuses to offer to the Court, after Wednesday, if you have an excuse to offer as to the rest of the week, the Court will be glad to hear you Wednesday after the jury is struck in the second capital case. Any of you who have excuses to offer at that time.

"Now I am going to excuse you until 11 o'clock while we call the docket."

As we understand the record, defendant was not in the courtroom while the foregoing proceedings took place.

In support of the motion, defendant's counsel testified that at the time the court qualified the venire for the week defendant was not in the "courtroom proper" and if defendant was anywhere near, his presence was not known to his counsel; that defendant " * * * wasn't anywhere near the desk and had not been seen by me 'at any time during the morning * * *."

The sheriff testified that throughout the qualification of the jurors, defendant " * * * was right in that room with the door open, standing behind some of the jurors. Chief Porter Moore was present with him and Olin Lawson, Deputy Sheriff"; that in the opinion of witness "20 or 25 feet" was the distance " * * * between the court bench here and the door there where the defendant was."

Defendant testified that he could hear the court but could not understand what the court was saying.

Chief Porter Moore testified that he was standing near defendant; that he, Moore, was nearer to the court than defendant was, by 2 or 3 feet; and that he, the witness, was " * * * able to hear the qualification of the jury."

This court has said:

"It is settled that the continuous presence of the defendant from arraignment to sentence is an essential part of the process provided for the trial of the defendant and without which the court has no jurisdiction to pronounce judgment against him. This principle was applied by the Court of Appeals in Chaney v. State, 56 So. 2d 385, 386, where in reversing the judgment of conviction the court said: 'However the record shows that, instead of having the jury returned to the courtroom, the judge, court reporter, solicitor, and defendant's counsel went into the jury room where the court instructed the jury further.' See Lee v. State, 31 Ala.App. 91, 13 So.2d 583, certiorari denied 244 Ala. 401, 13 So.2d 590." Neal v. State, 257 Ala. 496, 497, 59 So.2d 797, 798.

The State insists that because defendant could hear the court defendant was present in court, and in support of that contention relies heavily on Dozier v. State, 17 Ala.App. 609, 88 So. 54. The opinion in that case begins as follows:

"In brief, counsel for appellant insists that the trial court committed

reversible error, in that, after the jury retired to consider its verdict, within a few minutes thereafter, the court went to the jury room with counsel for the state and defendant, and opened the door to the jury room, and, standing just within the door, and in the presence of counsel, and with the defendant sitting just outside the door and in hearing of what was said, gave to the jury the following instructions." (17 Ala.App. 609, 88 So. 54)

The instructions thus given are then set out, but we omit them here because they have no bearing on the question at hand. The opinion continues as follows:

"This action of the court is not shown by the bill of exceptions, but does appear in the transcript. The action of the court, while informal and perhaps tends to create less respect for the dignity of the court, which at all times should be maintained, would not, we think, constitute reversible error, even if properly presented for review, which is not the case here. Grand Bay Land Co. v. Simpson, 202 Ala. 606, 81 South. 548; Sov. Camp W. O. W. v. Wallace, 16 Ala.App. 617, 80 South. 691." (17 Ala.App. 609, 88 So. 54)

The statement to effect that the action of the court did not constitute reversible error is a gratuitous comment unnecessary to the decision on that appeal. The language plainly shows that the question of the erroneous character of the court's action was not "properly presented for review." The two cases cited reinforce this proposition. In Grand Bay Land Co. v. Simpson, supra, this court said:

"* * * Under previous rulings of this court to the effect that a recital in the minute entry is not proper evidence on appeal that an exception was taken to the ruling of the court assigned for error, the court is unable to review the question which appellant has sought to

raise. (Citations Omitted.)" [202 Ala. 606, 81 So. 548]

In Sovereign Camp Woodmen of the World v. Wallace, supra, this court said:

"Counsel in brief takes exception to an excerpt from the court's general charge. No exception was reserved to the charge of the court on the trial, and hence we cannot consider it as here presented." [16 Ala.App. 617, 618, 80 So. 691, 692]

The statement in Dozier v. State, supra, to effect that the action of the court did not constitute reversible error is a comment not necessary to the decision in that case and is therefore dictum and is not controlling. Roquemore v. Sovereign Camp, W. O. W., 226 Ala. 279, 282, 146 So. 619.

We are of opinion that on the trial of a capital case, a defendant is not personally present in court when he is not in the courtroom; his counsel is in the courtroom but is not aware of defendant's whereabouts and has not seen defendant that morning; defendant is in a side room, the door of which is 20 or 25 feet from the bench; defendant is in custody and is standing by two officers, one of whom is 2 or 3 feet nearer the bench than defendant; defendant is standing behind some of the jurors; and defendant can hear the court talking but cannot understand what the court is saying.

"* * * we are not willing to deprive the defendant of his constitutional rights by a recital in the judgment entry when the facts as shown by the record show that he was not accorded his constitutional rights. Lynn v. State, 250 Ala. 384, 34 So.2d 602. Substance and not form should control in a situation of this kind where constitutional rights are involved. We are here dealing with fundamental rights recognized by this court as a part of the due process which should be accorded to the defendant. * * *" (257 Ala. 496, 497, 59 So.2d 797, 799)

Because defendant was not present in court when the court qualified the jury, the judgment must be reversed and the defendant tried again.

### III.

Defendant argues that the court erred to reversal in asking whether or not the defendant agreed to excusing the jurors who sought to be excused.

In a case where it was insisted that the court erred in ordering jurors who desired to be excused to see the attorney for defendant, this court declined to reverse because the record did not disclose such an order or a proper objection. With respect to the propriety of such an order, however, this court said:

"* * * There is, of course, no pretense of any order of the court in that respect. Clearly any such order would be erroneous as it is the duty of the court to hear all the excuses and himself pass upon the same. Title 30, § 38, Code of 1940; O'Rear v. State, 188 Ala. 71, 66 So. 81. No such responsibility could, of course, be shifted to the shoulders of the counsel for the defense. * * *" Taylor v. State, 249 Ala. 130, 136, 30 So.2d 256, 260.

In the instant case, however, the State insists that even if the court did err in asking defendant whether he agreed to excusing the jurors, defendant failed to object to the action of the court in so asking, and, therefore, there is no ruling to be reviewed.

We forego deciding whether the action of the court was in accord with § 38, Title 30, Code 1940, and Taylor v. State, supra.

We are of opinion that there is no ruling presented for review because defendant did not object to the inquiry made by the court with reference to defendant's agreeing to excuse jurors.

The purpose of objection and exception are to challenge the correctness of the action of the court so that such action may be corrected by the court itself, if deemed erroneous, and to lay the foundation for review, if necessary, by the appellate tribunal. Without such objection, the trial court ordinarily has the right to assume that its action is acquiesced in and free from error. Haygood v. State, 252 Ala. 3, 38 So.2d 593.

Neither do we think that the automatic appeal statute has dispensed with the necessity for an objection to enable us to review the action of the court in asking defendant whether he agreed to excusing jurors. Under the automatic appeal act, § 382(10), Title 15, Code of Alabama, Recompiled 1958, we are not required to review the oral charge of the court in the absence of an exception thereto. Easley v. State, 246 Ala. 359, 20 So.2d 519; Byrd v. State, 257 Ala. 100, 57 So.2d 388. The instant inquiry addressed by the court to defendant stands on no higher ground than the oral charge of the court, and in the absence of objection to the inquiry there is no ruling for review.

### IV.

Defendant argues that the court erred in admitting in evidence three photographs of the naked torso and head of the deceased and cites McKee v. State, 33 Ala. App. 171, 31 So.2d 656, for the proposition that photographs should be limited to such amount of the human anatomy as is necessary to show the wounds.

On examination of the photographs, we are of opinion that the photographs were sufficiently limited in that respect, and that the photographs met the test that they must have some tendency to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. They must have some tendency to shed some light upon some material inquiry. Rollings v. State, 160 Ala. 82, 49 So. 329; Nichols v. State, 267 Ala. 217, 100 So.2d 750.

## V.

Defendant argues that his alleged confession should not have been admitted in evidence. Defendant insists that the confession was not admissible because it was obtained at 1:30 a. m., when defendant had suffered numerous mosquito bites, had not eaten for five days, and neither defendant's counsel or relatives were present.

Defendant testified that he got to the sheriff's office where the confession was made at night, "about 11:00 or 12:00 o'clock"; that on Friday night defendant made up his mind to give himself up; that he went to the house of Melvin Pickett; that Pickett gave him a plate which was the first meal defendant had eaten since Monday; that Pickett took defendant to "Mr. Buck's," who was not at home; that defendant stayed in a box car until Pickett returned with Mr. Buck; that Mr. Buck asked defendant only one question and brought defendant to the city jail in Florala; that defendant stayed there a couple or three minutes and they brought him to the office; "But at the mean time I had a couple of drinks which I got, which I was very full and sleepy and tired"; that the drinks were "moonshine."

The witness Wilson, deputy sheriff, testified that the statement was made "Shortly after mid-night." Predicate was laid to show that the statement was voluntary. It was read to defendant. It has been sent to us. It bears several corrections near which appear in handwriting the initials, "A. K." The name, "Ansley Knight" is written at the bottom of each page.

The transcript shows that on cross-examination the signatures were shown to defendant and he admitted they were his signatures. Defendant testified as follows:

"Q You remember me handing you this statement in the sheriff's office?

"A Yes, sir, I remember that statement and you handed it to me.

"Q Giving you an opportunity to look over it?

"A Yes, sir, but I cannot read that good.

"Q And did I sit down there in the sheriff's office and read this statement over to you real slow?

"A Yes, sir, you read it to me.

"Q After each sentence that I read to you did I say you want to change anything here, Ansley, you can change it?

"A Yes, sir, you did.

"Q Then after this statement was read to you and signed and you said it was true so help you God, you initialed several corrections?

"A Yes, sir, I did."

On re-direct examination defendant testified:

"Q Did you kill Farris Russell because you were afraid of Farris Russell, or did you kill him in order to steal his money?

"A Scared, afraid of him.

"Q Afraid of him. Now you said awhile ago, Mr. Gantt made a motion of some kind showing how you had your arm around his neck when you were stabbing him. Was that inside or outside the cab when that was going on?

"A In my judgment I had my arm around him on the inside of the cab, but after we got out of the cab that's when I stabbed him twenty-four times."

Defendant's testimony in court is similar to the confession. We find no showing that the confession was obtained by threats or promises. The record does not indicate to us that defendant was subjected to prolonged questioning. There was no error in admitting the confession.

## VI.

Defendant contends that the verdict was contrary to the weight of the evidence,

"especially in view of the relative sizes of the two men." A careful reading of the transcript does not persuade us that defendant's contention is correct. In view of another trial we forego discussion of the evidence.

### VII.

In view of the action of the court in excluding the argument of the solicitor "comparing the defendant to a rattlesnake and a fang to an ice pick," we anticipate that this argument will not be repeated.

### VIII.

 Defendant undertook to reserve two exceptions to the oral charge. Counsel for defendant stated:

"MR. COOK: The defendant excepts to that portion of the Court's oral charge in which he stated you may not render a verdict of insanity."

The oral charge recites in pertinent part as follows:

"Gentlemen, the defendant in this case filed a plea of not guilty by reason of insanity. Every person is presumed to be sane and the burden of proof is on the defendant to show that he was insane at the time of the commission of this offense. If there is no evidence to substantiate that plea, you may not render a verdict on the plea of insanity."

Every person over fourteen years of age is presumed to be responsible for his acts, and the burden of proving that he is irresponsible is cast upon the accused. The defense of insanity in all criminal prosecutions shall be clearly proved to the reasonable satisfaction of the jury. § 422, Title 15, Code 1940. Parrish v. State, 139 Ala. 16, 50, 36 So. 1012; Jones v. State, 181 Ala. 63, 82, 61 So. 434; Grammer v. State, 239 Ala. 633, 637, 196 So. 268.

In the instant charge, we find no instruction that defendant's burden was to prove his plea of insanity to the reasonable satis-faction of the jury. The court did instruct that the burden was on the State to satisfy the minds of the jury beyond a reasonable doubt of his guilt. The jury could well assume that defendant's burden "to show" was also to show beyond a reasonable doubt.

Because of the difference between the degrees of proof resting on the State and defendant in the instant case, we think the portion of the oral charge quoted above is fairly subject to the criticism that the charge omits to state that defendant's burden is to prove his plea of insanity to "the reasonable satisfaction of the jury."

While defendant's exception does not reach this omission, the defect is noted so that it may be hereafter avoided.

Defendant's argument is directed to the concluding sentence of the quoted excerpt from the charge. Defendant insists that it was error to leave to the jury the question as to whether or not there was evidence to support the plea of insanity.

This court, in reviewing a conviction for rape, considered the propriety of a statement by the trial court that there was certain evidence before the jury. This court said there was no error in the statement made by the trial court, "but, what that testimony proved was for the jury to determine." The opinion closes with the following quotation:

"* * * 'Whether there be any evidence or not, is a question for the judge; whether it is sufficient evidence, is a question for the jury.'—1 Greenl. on Ev. § 49." Griffin v. The State, 76 Ala. 29, 32.

So in the instant case, whether or not there was any evidence to substantiate the plea of insanity was a question for the court.

After reviewing the evidence, however, we are of opinion that there was no evidence to support that plea. This court has held that where there is no evidence to establish the plea of insanity, it is not reversible error for the court in its oral

charge to instruct the jury to the effect that there is no evidence which would justify a finding of not guilty by reason of insanity. Walker v. State, 269 Ala. 555, 560, 114 So.2d 402. This court has further held that persons on trial for the commission of crimes are presumed sane and proof of the crime does not affect that presumption, and that the burden of proof is on defendant to support his plea of insanity. Walker v. State, supra.

As a result, we are of opinion that the portion of the charge excepted to, although incorrect, did not injure defendant, but was favorable to him, because the charge permitted the jury to find evidence to support defendant's plea of insanity, although there was no such evidence before them.

## IX.

■■■■■ The oral charge recites in part:

"Now I want to talk to you about retreat. If a mode of retreat is reasonably apparent to the defendant, he must do so provided he can do so without increasing his own peril beyond what he would have been subjected to provided he had stood and defended himself. The circumstances must have been such as to impress a reasonable man that the peril would have been increased, and that the defendant was impressed also that the peril would be increased if he tried to flee. Our appellate court, in the case of Cook(e) v. State, in (18 Ala.App. 416), 93 Sou., Page (86), 90, had this to say about the doctrine of retreat: 'This doctrine of retreat is sometimes referred to as being cowardly, but not so; it is based on the highest consideration of civilization, morals and our holy religion. It is better that one man should flee rather than take human life, if he can do so without apparently increasing his own danger to life or limb. It is the law of this sover(e)ign state, which he is bound to obey; it is the law of God, which he ignores at his peril. It is the

reasonable law of God and man.'" (Par. Supplied.)

In the instant case, defendant reserved a second exception as follows:

"The defendant also excepts to that portion of the Court's oral charge in which he stated the doctrine of retreat is sometimes considered as being cowardly."

An exception to "that part of the charge defining wantonness" has been held too indefinite to reserve an exception to the court's oral charge. Conway v. Robinson, 216 Ala. 495, 113 So. 531. The proper way to reserve an exception to a part of the court's oral charge is for the exceptor to select and recite what the court said, or state the substance of what the court said, and thus specifically bring to the attention of the trial court and this court the matter and ruling of which complaint is made. Pollard v. Rogers, 234 Ala. 92, 96, 173 So. 881.

Statements of law in judicial opinions are not always proper for jury instructions in other cases. Mobile Infirmary v. Eberlein, 270 Ala. 360, 367, 119 So.2d 8. Lifting language from an opinion and embodying it in a written charge does not of itself make it a correct instruction to the jury. Lakey v. State, 258 Ala. 116, 122, 61 So.2d 117. Much is properly said in the opinions of appellate courts which is not proper to be given in charge to juries. Kansas City, M. & B. R. Co. v. Matthews, 142 Ala. 298, 313, 39 So. 207. To like effect, see Woodbury v. State, 69 Ala. 242; Thompson v. Alexander City Cotton Mills Co., 190 Ala. 184, 194, 67 So. 407; Gray v. Anderson, 241 Ala. 154, 157, 1 So.2d 384; Harper v. State, 16 Ala.App. 153, 75 So. 829.

Defendant's attempt to reserve his second exception to the oral charge may be sufficient to present for review the propriety of the first sentence quoted by the trial court from Cooke v. State, supra, but we do not think defendant properly re-

served exception to the entire quotation of which he now complains.

The first sentence of the quotation, standing alone, may not be such error as to require reversal, but we are not to be understood as approving that sentence as a proper one to give in a charge to the jury. Defendant's argument is addressed to the entire quotation, not merely the first sentence, but the remainder of the quotation was not excepted to.

In view of another trial, however, and the argumentative nature of the quotation, we deem it proper to suggest that possible error may be avoided by omitting the quotation altogether.

### X.

 The mother of deceased testified for the State that deceased had twin children, who were eleven years old "the 27th of last May," and who "are here today" and "in the witness room." The court overruled defendant's motion to strike the testimony of the mother.

We have not found where the children of deceased testified or how they have any connection whatever with the issues on trial in this case.

In Fisher v. State, 23 Ala.App. 544, 129 So. 303, the Court of Appeals, in a homicide case, held it to be reversible error to permit widow of deceased to testify " * * * in detail, about the number of children left by deceased, their ages, etc." The Fisher case is criticized, but not overruled in Lovejoy v. State, 244 Ala. 637, 15 So.2d 303.

How many children the slain man had, their ages, and that they were in attendance in the witness room are irrelevant facts in the instant case. The writer is of the view that to hold such evidence not prejudicial to the defendant is to disregard the realities of trial atmosphere and the emotional frailties of human nature. This the writer feels bound to note in view of another trial and § 382(10), Title 15, Code 1940, Recompiled 1958; 40 C.J.S. Homicide § 225, p. 1146; and 26 Am.Jur. 367, Homicide, § 314.

### XI.

 The judgment recites in pertinent part as follows:

" * * * the court ordered and adjudged that said defendant was guilty of murder in the first degree as charged in the indictment in this cause * * *.";

and

" * * * Thereupon, the court sentenced the defendant to death * * *."

As in Gray v. State, 55 Ala. 86, the quoted recital of the instant judgment "strictly considered, is the mere memorandum of a ministerial officer, narrative of, but not contemporaneous with, the transaction to which it refers."

The judgment is insufficient. Wright v. State, 103 Ala. 95, 15 So. 506; Marks v. State, 131 Ala. 44, 31 So. 18; Moss v. State, 140 Ala. 199, 37 So. 156; Shepard v. State, 20 Ala.App. 627, 104 So. 674; Blakely v. State, 28 Ala.App. 574, 190 So. 102.

For the errors pointed out, the judgment is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.